IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW THOMAS WOOLEN, #A6120248, | CIVIL NO. 24-00158 LEK-KJM |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED PRISONER CIVIL RIGHTS COMPLAINT WITH LEAVE GRANTED TO AMEND |
| vs. | |
| ETHAN RAMOS; *et al.*, | |
| Defendants. | |

## <u>ORDER DISMISSING FIRST AMENDED PRISONER CIVIL RIGHTS COMPLAINT WITH LEAVE GRANTED TO AMEND</u>

Before the Court is a First Amended Prisoner Civil Rights Complaint ("FAC"), ECF No. 10, filed by pro se Plaintiff Andrew Thomas Woolen ("Woolen") pursuant to 42 U.S.C. 1983. In the FAC, Woolen alleges that prison officials violated his constitutional rights during his incarceration at the Hawaii Community Correctional Center ("HCCC") in Hilo, Hawaii.[1] Specifically, Woolen

---

[1] According to the FAC, Woolen is now incarcerated at the Halawa Correctional Facility. *See* ECF No. 10 at PageID.42. An online inmate locator reflects, however, that Woolen is currently incarcerated at the Saguaro Correctional Center in Eloy, Arizona. *See* VINE, https://vinelink.vineapps.com/search/HI/Person?siteRefId=HISWVINE (select "ID Number," enter "A6120248," and select "Search") (last visited July 8, 2024). Woolen is reminded that he is required to file a Notice of Change of Address within fourteen days of any change. LR83.1(e)(1). If Woolen is no longer incarcerated at the Halawa Correctional Facility, he must promptly notify the Court of this fact in writing. Failure to do so may result in dismissal of this lawsuit. *Id.*

alleges that Adult Corrections Officer ("ACO") Ethan Ramos used excessive force (Count I), and that an unnamed "acting sergeant" threatened his safety by housing him with two gang members (Count II).  ECF No. 10 at PageID.47–PageID.48. Woolen also alleges that Sergeant Kilmer, who is not named as a defendant, denied him medical care (Count III).  *Id.* at PageID.50.  Finally, Woolen alleges that "Sgt. Johnny U." and "Sgt. Watanabe," both of whom are not named as defendants, retaliated against him.  *Id.* at PageID.51.  For the following reasons, the FAC is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1) with leave granted to amend.  If Woolen wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **August 9, 2024**.  In the alternative, Woolen may voluntarily dismiss this action pursuant to Fed. R. Civ. P. 41(a)(1), and he will not incur a "strike" pursuant to 28 U.S.C. § 1915(g).

## I.  STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **BACKGROUND**[2]

On the morning of November 6, 2022, ACO Ramos punched Woolen several times in the face and head before placing him in a chokehold.  ECF No. 10 at PageID.47; *see also id.* at PageID.51.  At the time of the incident, Woolen was a pretrial detainee at the HCCC.  *See id.* at PageID.42–PageID.43.  Woolen's lip was cut during the incident, and he later experienced pain and interrupted sleep because of neck spasms.  *Id.* at PageID.47.  He also experienced post-traumatic stress disorder symptoms including nightmares.  *Id.*  The incident was recorded by closed-circuit television cameras and observed by other inmates.  *Id.*

After the incident, Woolen visited the medical unit where pictures were taken of his injuries.  *Id.* at PageiD.51.  Woolen told "Sgt. Johnny U." that he wanted to press assault charges against ACO Ramos.  *Id.*  Sgt. Johnny responded by moving Woolen out of the protective custody housing unit where he had been staying and into a housing unit that also housed known gang members.  *Id.*  According to Woolen, Sgt. Johnny did this to intimidate him.  *Id.*  Sometime later, Woolen told Sgt. Johnny that he would not file a police report if he was moved back to the protective custody housing unit.  *Id.*

---

[2] Woolen's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

4

Approximately one week later, Woolen witnessed ACO Ramos assault another inmate. *Id*. Woolen reported this incident and his own encounter with ACO Ramos to the Office of the Ombudsman. *Id.* An investigation followed that was led by Lieutenant Ahuna. *Id.* As part of that investigation, a police report against ACO Ramos was filed. *Id.*

At some point, ACO Ramos approached Woolen saying that "[Woolen] had to make the investigation go away." *Id.* ACO Ramos added that Woolen had to tell mental health officials that he was not in his right mind, and to report that Lt. Ahuna had encouraged Woolen to file a police report. *Id.* Instead of doing as ACO Ramos had asked, Woolen reported to mental health officials that ACO Ramos was threatening and intimidating him. *Id.* Woolen provided a detailed account of these events to Lt. Ahuna. *Id.*

Approximately two weeks later, another officer approached Woolen and told him to trust only Lt. Ahuna. *Id.* The officer also told Woolen that an officer named Sergeant Watanabe was attempting to "sweep the assaults under the rug." *Id.* The officer told Woolen these things in the presence of at least one other officer. *Id.* The next day, Sgt. Watanabe removed Woolen from his housing unit. *Id.* Sgt. Watanabe said that he did this to protect the integrity of the ongoing investigation and at the direction of Lt. Ahuna. *Id.*

In January 2023, Woolen moved into "max custody" and was housed in what he described as "an overcrowded cell." *Id.* On January 10, Woolen was severely beaten by his two cellmates, both of whom were gang members. *Id.* at PageID.48. Woolen's injuries included a cut over his left eye that required stitches, and a broken hand that required a cast. *Id.* Woolen was previously separated from the general population following two assaults by gang members. *Id.* The "acting sergeant" who placed Woolen knew of these earlier assaults because that officer had originally taken Woolen out of the general population. *Id.* After this incident, another inmate, David Willet, told Woolen that an unidentified officer had offered him tobacco to assault Woolen. *Id.*

At some point during the same month, Woolen was placed on suicide watch after he threatened to harm himself. *Id.* at PageID.50. A few days later, Sgt. Kilmer asked Woolen if he wanted to leave suicide watch. *Id.* Still wanting to harm himself, but without a means of doing so, Woolen said that he wanted to leave suicide watch. *Id.* Without further evaluation, Woolen was released from suicide watch. *Id.* After Woolen found a razor in his cell, he attempted suicide by cutting himself. *Id.*

Woolen commenced this action by signing the Complaint on March 18, 2024. ECF No. 1 at PageID.8. In the Complaint, Woolen alleged that ACO Ramos used excessive force, and that an unnamed sergeant threatened his safety.

6

*Id.* at PageID.5–PageID.6.  On April 9, 2024, the Court granted, ECF No. 3, Woolen's Application to Proceed In Forma Pauperis by a Prisoner, ECF No. 2.  On May 8, 2024, the Court dismissed the Complaint with partial leave granted to amend.  ECF No. 4.

The Court received the FAC on July 1, 2028.  ECF No. 10.  In the FAC, Woolen alleges that ACO Ramos used excessive force, and that three Doe defendants threatened his safety, denied him medical care, and retaliated against him.  *Id.*  Woolen seeks $500,000 in damages and unspecified injunctive relief.  *Id.* at PageID.53.

### III. <u>DISCUSSION</u>

**A.     Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'"  *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

**B.     Improper Joinder**

Woolen alleges in Count I that ACO Ramos used excessive force during an incident on November 6, 2022.  ECF No. 10 at PageID.47.   In Count II, Woolen alleges that an "acting sergeant" threatened his safety by housing him with two gang members while knowing that Woolen was previously placed in protective custody because of two prior assaults by gang members.  *Id.* at PageID.48.  In Count III, Woolen alleges that he was denied medical care because he was not assessed before being released from suicide watch.  *Id.* at PageID.50.  Finally, in Count IV, Woolen alleges that Sgt. Johnny and Sgt. Watanabe, neither of whom is named as a defendant, retaliated against him.  *Id.* at PageID.51.

Under Fed. R. Civ. P. 18(a), governing joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant.  To name different defendants in the same lawsuit, however, a plaintiff must satisfy Fed. R. Civ. P. 20, governing joinder of parties.  Rule 20(a)(2) allows joinder of defendants only if the following two requirements are met: (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P. 20(a)(2)(A)–(B); *Stribling v. Tobias*, 690 F. App'x 972, 973 (9th Cir. 2017).  Unrelated claims involving different defendants

8

belong in different suits. *See What v. Honolulu Police Dep't*, Civil No. 13–00373 HG–RLP, 2014 WL 176610, at *4–5 (D. Haw. Jan. 13, 2014).

Here, Woolen must clarify the connection between his various claims before any of them can proceed. For example, Woolen should say whether the threat to safety claim in Count II is based on the conduct of Sergeant Johnny. If so, Sergeant Johnny should be named as a defendant. Moreover, Woolen must clarify how Count III relates, if at all, to the other Counts. At this point, there is no apparent connection between Woolen's removal from suicide watch and the earlier assault and resulting retaliation. The fact that events occurred at the HCCC, without more, is not enough to satisfy the joinder rules. *See Woods v. Curry*, No. C 10-1859 JSW (PR), 2013 WL 12222362, at *1 (N.D. Cal. May 2, 2013) (concluding that prisoner improperly joined claims "based on a wide variety of unrelated events that occurred at his prison"). Woolen may not pursue a combination of unrelated claims against various defendants in a single suit. *See Char v. Kaiser Hosp.*, Civ. No. 18-00345 JAO-RLP, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate actions."). He may, however, raise any unrelated claims in a separate action or actions. *See D'Agirbaud v. Kam*, Civ. No. 20-00139 JAO-KJM, 2020 WL 3258408, at *5 (D. Haw. June 16, 2020) (explaining that dismissing

complaint for misjoinder allowed plaintiff "to decide which related claims he will pursue in this action, and which claims he will bring in a new action").

If Woolen decides to file an amended pleading, any claim asserted therein must be permitted by either Rule 18 or Rule 20. Woolen may state a single claim against a single defendant. Pursuant to Rule 18, Woolen may then add any additional claims to his action that are against the same defendant. Fed. R. Civ. P. 18. Woolen may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined and, at a minimum, will result in delay in their adjudication. In deciding whether to file an amended pleading, Woolen should also consider the following legal standards.

## C.     Excessive Force

Woolen alleges in Count I that ACO Ramos used excessive force on November 6, 2022, while Woolen was a pretrial detainee. ECF No. 10 at PageID.47.

As the Supreme Court has stated, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Under this standard, "a pretrial detainee

must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.  Objective reasonableness turns on the facts and circumstances of each case. *Id.* at 397.  Relevant considerations include, among other things, the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort by the officer to temper of limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id.*

Here, although Woolen alleges that ACO Ramos punched him several times in the face and put him in a chokehold, he does not provide any details regarding the circumstances surrounding that use of force.  For example, Woolen does not say what prompted ACO Ramos to use force or if it was unprovoked.  If there was a security problem or a threat to ACO Ramos, Woolen does not say what they were.  Finally, Woolen does not say if he was resisting ACO Ramos's efforts to subdue him.

## D.    Threat to Safety

Woolen alleges in Count II that an unnamed, "acting sergeant" threatened his safety by moving him into a cell with two gang members.  ECF No. 10 at PageID.48.

11

To establish a threat-to-safety claim as a pretrial detainee, the plaintiff must show that:

> (1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (formatting and footnoted omitted).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks, brackets, and citations omitted). A pretrial detainee who asserts a threat to safety claim must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

Here, although Woolen alleges that he previously was removed from the general population after being assaulted by gang members on two occasions, he does not provide the details of those assaults, nor does he otherwise explain why the earlier incidents should have alerted the "acting sergeant" to a threat to Woolen's safety. For example, if Woolen was previously attacked by rival gang members and he was moved into a cell with rival gang members, he should say so.

In addition, Woolen should make clear the timing of the various assaults.  At bottom, Woolen must allege facts showing that being housed with two gang members posed a substantial risk of serious harm that the "acting sergeant" failed to mitigate.

**E.      Medical Care**

Woolen alleges in Count III that prison officials denied him adequate medical care by releasing him from suicide watch without an assessment.  ECF No. 10 at PageID.50.

"[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

The elements of a pretrial detainee's medical care claim are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.  *Id.* at 1125.

Regarding the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id.* (quotation marks and citation omitted) (alteration in original).  The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment"; the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).

Here, although Woolen alleges that he told Sgt. Kilmer that he did not want to remain on suicide watch, ECF No. 10 at PageID.50, Woolen does not allege that Sgt. Kilmer made the decision to release him or that he set the conditions for that release.  Moreover, to the extent Woolen alleges that he found a razor blade in his new cell that he used to cut himself, Woolen has not plausibly alleged that Sgt. Kilmer decided where Woolen was housed or the conditions in that cell.

## F.    Retaliation

Woolen alleges in Count IV that prison officials retaliated against him by placing him in dangerous housing situations.  ECF No. 10 at PageID.51.

"[A] prisoner can make a viable claim of First Amendment retaliation by alleging five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021) (quotation marks and citation omitted).

Here, although Woolen alleges that Sgt. Johnny moved him into a housing unit "with known gang members for the purpose of intimidation," and that Sgt. Watanabe moved him into a "overcrowded cell" in "max custody," neither Sgt. Johnny nor Sgt. Watanabe is named as a defendant in the FAC.  In addition, Woolen does not say how his various housing assignments chilled the exercise of his First Amendment rights.  Nor does Woolen allege that his placements did not serve a legitimate correctional goal.  Indeed, according to Woolen, Sgt. Watanabe's stated reason for moving him was "to protect the integrity" of the ongoing investigation.  ECF No. 10 at PageID.51.  If Woolen thinks that this reason was pretextual, he should say so.

## G.    Doe Defendants

Woolen includes "Does 1–3" in the FAC's caption.  ECF No. 10 at PageID.10.

Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action.  As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve

a summons and complaint or amended complaint upon an unknown or anonymous defendant.  The use of doe defendants is therefore generally disfavored in federal court.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

If the names of individual defendants are unknown at the time a complaint is filed, a plaintiff may refer to the unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must still allege facts to support how each particular Doe defendant violated the plaintiff's constitutional rights.

Here, it is unclear if the use of Doe defendants is necessary.  To the extent Woolen knows the names of officers who allegedly violated his constitutional rights, he must include them in any amended pleading that he files.  If Woolen does not know the name of any defendant, and he can cure the deficiencies in his claims, Woolen may use the discovery processes for a limited period set by the Court to obtain the names of Doe defendants whom he believes violated his constitutional rights and seek leave to amend to name those defendants once identified, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.  *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642 (9th Cir. 1980)). If the use of Doe defendants is necessary, Woolen must clarify how each Doe defendant allegedly violated his rights.

## IV.  **LEAVE TO AMEND**

The FAC is DISMISSED with leave granted to amend.  Woolen must file any amended pleading on or before **August 9, 2024**.  Woolen may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the FAC.  Claims that do not properly relate to those in the FAC are subject to dismissal.

Woolen must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form.  *See* LR99.2(a).  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.  **28 U.S.C. § 1915(g)**

If Woolen fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28

U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a

civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of the
> United States that was dismissed on the grounds that it is frivolous,
> malicious, or fails to state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  <u>CONCLUSION</u>

(1) The FAC, ECF No. 10, is DISMISSED pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b).

(2) Woolen must file any amended pleading on or before **August 9, 2024**.

(3) Failure to timely file an amended pleading may result in AUTOMATIC

DISMISSAL of this suit without further notice, and Woolen may incur a strike

under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Woolen may voluntarily dismiss this action

pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not

count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Woolen a blank prisoner civil rights

complaint form so that he can comply with this order if he elects to file an

amended pleading.

(6) The Clerk is further DIRECTED to send Woolen a copy of this order and the blank complaint form at both the Halawa Correctional Facility and the Saguaro Correctional Center.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 10, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**ANDREW THOMAS WOOLEN VS. ETHAN RAMOS; _et al._; CV 24-00158 LEK-KJM; ORDER DISMISSING FIRST AMENDED PRISONER CIVIL RIGHTS COMPLAINT WITH LEAVE GRANTED TO AMEND**